**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-02578-NYW-TPO

ADAEZE NWOSU,

      Plaintiff,

v.

MAGDALIT BOLDUC,
LUC VAILLANT,
THE ARCHDIOCESE OF DENVER,
THE CATHOLIC COMMUNITY OF THE BEATITUDES,
APOLISTIC NUNCATURE, UNITED STATES OF AMERICA,
206 TOURS, INC., and
JOHN DOE DEFENDANTS,[1]

      Defendants.

---

### ORDER ON MOTION TO DISMISS AND ORDER TO SHOW CAUSE

---

Pending before the Court is the Motion to Dismiss [Doc. 34], filed by Defendants Archdiocese of Denver, Magdalit Bolduc, Luc Vaillant, and the Catholic Community of the Beatitudes (together, "Archdiocese Defendants").  Plaintiff Adaeze Nwosu ("Plaintiff" or "Ms. Nwosu") has not responded, and the time to do so has elapsed.  *See* [Doc. 43].  The Court finds that oral argument would not materially assist in the disposition of the Motion to Dismiss.  Upon review of the Motion to Dismiss, the applicable case law, and the entire docket, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

---

[1] Neither the Apostolic Nunciature, 206 Tours, Inc., nor the John Doe Defendants have appeared in this case.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint, [Doc. 1],[2] and the Court presumes they are true for purposes of the Motion to Dismiss.  In April 2023, Ms. Nwosu traveled on a "13-day religious pilgrimage to the Holy Land."  [Doc. 1 at ¶ 3.1].  Defendant 206 Tours, Inc. ("206 Tours") organized the tour.  [*Id.*].  206 Tours hired Defendant Magdalit Bolduc ("Sister Bolduc"), a nun and member of Defendant Catholic Community of the Beatitudes (the "Community"), to act as a tour guide.  [*Id.*].  Ms. Nwosu is a 30-year-old "'Black' woman of African ethnicity and origin," while most of the other tour participants were white and over 60 years old.  [*Id.*].

During the trip, Ms. Nwosu allegedly began a romantic relationship with non-party Jeffrey Johnson ("Mr. Johnson").[3]  [*Id.*].  According to Plaintiff, Sister Bolduc disapproved of and envied her relationship with Mr. Johnson.  [*Id.* at ¶¶ 3.1, 8.1.6, 8.1.10].  This envy, combined with a "racial hate" toward Plaintiff, caused Sister Bolduc to carry out various discriminatory acts against Plaintiff during the trip.  [*Id.* at ¶ 3.1].  Those acts include

---

[2] Because Plaintiff proceeds pro se, the Court liberally construes her filings.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).  But the Court cannot and does not act as her advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party, *see Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).  Indeed, the Court takes judicial notice that Ms. Nwosu is no stranger to the federal courts and should therefore be well-acquainted with the rules and procedures that govern them.  *See, e.g.*, *Nwosu v. Gritz, Hanifin & Shih, LLC*, No. 8:24-cv-00162-DKC (D. Md. Apr. 5, 2024); *Nwosu v. Yale Univ.*, No. 24-cv-07919-LTS, 2024 WL 4743022 (S.D.N.Y. Oct. 24, 2024); *Nwosu v. Johnson*, No. 2:24-cv-09439-TJH-KES, 2025 WL 1744899 (C.D. Cal. June 20, 2025).

[3] Though the Court takes this allegation as true for purposes of the Motion to Dismiss, the Court notes that Mr. Johnson disputes the existence of any relationship between himself and Ms. Nwosu.  *See* [Doc. 14 at 2–4].  Mr. Johnson asserts that, since the tour, Ms. Nwosu has "stalk[ed]" him and "put Mr. Johnson's privacy, safety, and career in jeopardy," leading him to seek multiple protective orders against her.  [*Id.*].

making negative comments about Ms. Nwosu "behind her back," directing a bus driver to leave Ms. Nwosu behind at a tourist site, and failing to print Ms. Nwosu a "certificate[] of completion" that tour participants usually receive.  [*Id.* at ¶¶ 8.1.5–8.1.6, 8.1.8–8.1.9]. Sister Bolduc also succeeded in ending Ms. Nwosu's alleged relationship with Mr. Johnson.  [*Id.* at ¶¶ 3.1, 8.1.10].  After the trip, Sister Bolduc continued to make alleged defamatory statements about Plaintiff to Mr. Johnson and Defendant Luc Vaillant ("Father Vaillant"), a priest within the Archdiocese of Denver (the "Archdiocese").  *See* [*id.* at ¶¶ 2.3, 3.1, 8.2.13, 8.2.15].  Sister Bolduc's statements portrayed Plaintiff in a "false light" and, in conjunction with unspecified conduct by other Defendants, "brainwashed" Mr. Johnson into seeking a protective order against Plaintiff.  [*Id.* at ¶¶ 8.2.17, 8.2.20–8.2.21].

Ms. Nwosu then commenced this lawsuit.  She brings claims for (1) race and age discrimination ("Count One"), (2) intentional infliction of emotional distress ("IIED") and defamation ("Count Two"), (3) breach of contract ("Count Three"), (4) negligence[4] ("Count Four"), and (5) fraudulent and negligent misrepresentation ("Count Five").  *See* [*id.* at ¶¶ 8.1, 8.2, 8.3, 8.4, 8.5].  The Archdiocese Defendants move to dismiss all five counts with prejudice.  *See* [Doc. 34].

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under

---

[4] Count Four also alleges gross negligence.  [Doc. 1 at ¶ 8.4].  But "the law of the District of Columbia does not recognize degrees of negligence."  *Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 116 (D.D.C. 2012) (cleaned up); *see also infra* note 8 (assuming without deciding that District of Columbia law applies).  And Plaintiff does not allege that this is one of the "limited circumstances" where gross negligence would be relevant.  *Hernandez*, 845 F. Supp. 2d at 116.  The Court thus construes Count Four as an ordinary negligence claim.

Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

The Court "may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (cleaned up). The inquiry under Rule 12(b)(6) focuses solely on the sufficiency of the allegations in the Complaint. *See id.* When determining whether to dismiss a complaint under Rule 12(b)(6), the salient question for the Court thus remains "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

## I.    Count One:  Age and Race Discrimination

Ms. Nwosu's discrimination claim comprises claims for both age discrimination, in violation of the Age Discrimination Act of 1975 ("Act" or "AgeDA"), 42 U.S.C. § 6102, and race discrimination, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *See* [Doc. 1 at ¶ 8.1]. The Motion to Dismiss focuses only on the Title VI race discrimination claim. *See* [Doc. 34 at 4–7]. The Court accordingly begins with the Title VI claim before turning to the AgeDA claim.

4

## A.    Race Discrimination

Count One alleges that Sister Bolduc and other Defendants discriminated against Plaintiff on the basis of race, in violation of Title VI of the Civil Rights Act of 1964. *See, e.g.*, [Doc. 1 at 8.1]. Title VI prohibits discrimination on the basis of race, color, or national origin in any federally funded program or activity. 42 U.S.C. § 2000d. To state a claim of discrimination under Title VI, a plaintiff must allege facts establishing that (1) the defendants intentionally discriminated against the plaintiff on the basis of race, color, or national origin, and (2) "the entit[ies] engaging in discrimination [are] receiving federal financial assistance." *Al Ghareeb v. Bd. of Trs. at Univ. of N. Colo.*, 849 F. App'x 746, 748 (10th Cir. 2021) (first citing *Baker v. Bd. of Regents of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993); and then citing *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (requiring intentional discrimination)).

As an initial matter, the Court agrees with the Archdiocese Defendants that Plaintiff fails to allege that Sister Bolduc, Father Vaillant, or 206 Tours are entities receiving federal financial assistance. [Doc. 34 at 5–6]. The Complaint contains no allegations that 206 Tours receives federal funding. With respect to Sister Bolduc and Father Vaillant, Plaintiff alleges that "[t]he Catholic Church is a recipient of Federal funding," so its clergy and employees are bound by federal anti-discrimination law. [Doc. 1 at ¶ 8.1.1]. But Ms. Nwosu fails to explain why that would provide a basis for individual liability against those clergy and employees. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has held that "individual employees of such entities [receiving federal funds] are not liable under Title VI." *Webb v. Swensen*, 663 F. App'x 609, 613 (10th Cir. 2016). Accordingly, Plaintiff fails to state a Title VI claim against these Defendants.

The Archdiocese Defendants further argue that Ms. Nwosu fails to allege facts "connecting 206 Tours to the Archdiocese of Denver or the Community of Beatitudes." [Doc. 34 at 5–6]. Nor does she suggest that "the Archdiocese itself discriminated against her or turned a blind eye to her plight." [*Id.* (quoting *Nwosu v. Bolduc*, No. 23-cv-03841-DLF, 2024 WL 1050339, at *2 n.1 (D.D.C. Mar. 10, 2024)]. Without a connection between the discriminatory conduct and the Archdiocese or the Community, the Archdiocese Defendants contend that Ms. Nwosu cannot state a Title VI claim against these entities. [*Id.*].

Ms. Nwosu must allege some connection between discriminatory conduct and the Archdiocese or the Community, because Title VI does not provide for liability "on the basis of *respondeat superior* alone." *Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1335 (D. Utah 2008) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).[5] To hold an entity liable for its employee's conduct, a plaintiff must allege that an "appropriate person" at the entity—that is, someone in a position to implement anti-discrimination measures—had actual notice of the conduct and failed to adequately respond. *Id.*

Ms. Nwosu provides no such allegations here. Her Complaint suggests that the Archdiocese or other entities may be liable for the discriminatory acts of their "clergy" or "employees." [Doc. 1 at ¶ 8.1.1]. And her discrimination allegations focus entirely on Sister Bolduc's conduct during the pilgrimage, without alleging any conduct by any other

---

[5] In *Gebser*, the Supreme Court held that Title IX does not permit vicarious liability for sex discrimination claims. 524 U.S. at 292–93. Although the Tenth Circuit has not addressed the issue, courts consistently apply *Gebser* to Title VI, which employs the same remedial scheme as Title IX. *See Jones v. City of Detroit*, 20 F.4th 1117, 1121 (6th Cir. 2021) (collecting cases and holding that "[w]hat was true for Title IX in *Gebser* is true for Title VI today"); *Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir. 2022) (concurring with *Jones*'s reading of *Gebser*).

Defendant. *See generally* [*id.* at ¶¶ 8.1.1–8.1.20]. The Complaint contains no factual allegations that an "appropriate person" at the Archdiocese or the Community had notice of Sister Bolduc's conduct and failed to adequately respond. Without those facts, Ms. Nwosu cannot hold those entities liable under Title VI for Sister Bolduc's conduct. *See Assenov*, 553 F. Supp. 2d at 1335. Accordingly, the Title VI portion of Count One is **DISMISSED without prejudice** as to the Archdiocese Defendants.[6]

### B.    Age Discrimination

Ms. Nwosu asserts that "at 30 years old she was the most visibly youngest in the pilgrimage." [Doc. 1 at ¶ 8.1.3]. Ms. Nwosu does not distinguish her age discrimination allegations from her race discrimination allegations, but she claims that her age was a basis for Sister Bolduc's alleged "abusive and discriminatory actions." [*Id.* at ¶ 8.1.4].

The Age Discrimination Act provides that "no person in the United States shall, on the basis of age, . . . be subjected to discrimination under[] any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102. Before an "interested person" may sue for age discrimination, the Act imposes two pre-suit requirements. § 6104(e). First, the interested person "shall give notice" of the suit, at least 30 days before suing, to the Secretary of Health and Human Services, the Attorney General, and the person to be

---

[6] The Motion is respectfully **DENIED** to the extent the Archdiocese Defendants seek dismissal of Plaintiff's claims with prejudice. *See* [Doc. 34 at 15]. "[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Defendants argue broadly that the many defects in Plaintiff's claims warrant dismissal with prejudice, [Doc. 34 at 15], but the Court is respectfully unpersuaded that those defects are incurable or that her claims are otherwise subject to dismissal with prejudice at this juncture. *Gee*, 627 F.3d at 1186 (recognizing that dismissal with prejudice is appropriate only where leave to amend would be futile).

sued.  § 6104(e)(1).  Second, "[n]o action . . . shall be brought . . . if administrative
remedies have not been exhausted."  § 6104(e)(2).

Although the Archdiocese Defendants do not address Plaintiff's AgeDA claim in
the Motion to Dismiss, the Court observes several deficiencies on the face of Plaintiff's
Complaint.  For one, as with her Title VI claim, Ms. Nwosu fails to allege that she was
subjected to age discrimination by an entity receiving federal financial assistance.  42
U.S.C. § 6102; *see also supra* Part I.A.  She does not allege that 206 Tours receives
federal financial assistance, does not assert that individual liability is available under the
AgeDA, and does not explain why *Gebser* and its progeny should not bar respondeat
superior liability under the AgeDA.  Moreover, she does not allege that she complied with
the AgeDA's pre-suit notice and exhaustion requirements.[7]  Even if Ms. Nwosu had
satisfied these basic statutory requirements, her allegations of age discrimination are
conclusory.  She does not allege discriminatory conduct by any Defendant other than
Sister Bolduc.  Nor does she allege facts indicating that Sister Bolduc discriminated

---

[7] Some courts have construed the AgeDA's pre-suit requirements as jurisdictional
prerequisites.  *See, e.g.*, *Alexander v. N.M. Vocational Rehab.*, No. 1:07-cv-00230-MCA-
LCS, 2008 WL 11399605, at *5 (D.N.M. Sept. 25, 2008) (collecting cases).  Although
neither Party raises this issue, the Court has an independent duty to verify its subject
matter jurisdiction.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  But the Supreme
Court has also cautioned lower courts not to treat limitations on statutory rights of action
as jurisdictional unless the statute "clearly states" as much.  *Id.* at 515–16.  Although the
Tenth Circuit has not specifically addressed the AgeDA's pre-suit requirements, it has held
that Title VII's roughly analogous exhaustion requirement is not jurisdictional.  *See Lincoln
v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).  Nor does the AgeDA expressly
state that its notice and exhaustion requirements are jurisdictional.  *See* 42 U.S.C.
§ 6104(e); *see also Galuten ex rel. Galuten v. Williamson Cnty. Hosp. Dist.*, No. 21-5007,
2021 WL 3043275, at *4 n.3 (6th Cir. July 20, 2021) ("It is questionable whether the ADA's
exhaustion requirement provides the type of clear statement necessary to make it
'jurisdictional' post-*Arbaugh*.").  The Court accordingly construes the AgeDA's pre-suit
requirements as non-jurisdictional.

against her on the basis of age, as opposed to acting on the basis of "racial hate" or jealousy of Ms. Nwosu's purported relationship with Mr. Johnson. *See* [Doc. 1 at ¶ 3.1].

In considering these deficiencies, the Court takes judicial notice of Ms. Nwosu's frequent litigation across the country. *See, e.g.*, *Nwosu v. Atl. Bridge Corp.*, No. 8:24-cv-02083-JVS-JDE, 2025 WL 736612 (C.D. Cal. Feb. 5, 2025); *Nwosu v. Smith*, No. 24-1486, 2024 WL 4850772 (4th Cir. Nov. 21, 2024); *Nwosu v. CBRE Grp., Inc.*, No. 23-cv-03517-PX, 2024 WL 5279179 (D. Md. Sept. 11, 2024); *see also supra* note 2 (collecting still more cases). She has already attempted to bring nearly identical claims to the claims in this case in another court. *Bolduc*, 2024 WL 1050339, at *2 & n.1 (dismissing prior case for lack of personal jurisdiction but noting that Ms. Nwosu's claims "likely" fail on their merits). Having apprised Ms. Nwosu of the flaws in her age discrimination claim, the Court will allow her an opportunity, no later than August 14, 2025, to **SHOW CAUSE** why her age discrimination claim against the Archdiocese Defendants should not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See McKinney v. Okla. Dep't of Hum. Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (authorizing sua sponte dismissal under Rule 12(b)(6) "when it is patently obvious that the plaintiff could not prevail on the facts alleged" and amendment would be futile (quotation omitted)). **<u>The Court expressly advises Plaintiff that failure to respond to the Order to Show Cause may result in dismissal of this portion of Count One without any further notice by the Court.</u>**

II.     **Count Two:  Intentional Infliction of Emotional Distress and Defamation**

As with Count One, Count Two effectively asserts two separate claims—one for IIED and the other for defamation.  These claims arise from events after the tour.  Ms. Nwosu alleges that Sister Bolduc failed to respond to an email, accused her of harassment, and "brainwashed" Mr. Johnson into obtaining a protective order against her. [Doc. 1 at ¶¶ 8.2.4, 8.2.6, 8.2.17, 8.2.20].  Ms. Nwosu further alleges that Sister Bolduc attempted to prevent her from entering Sister Bolduc's convent and caused Father Vaillant to show "hostility" towards Ms. Nwosu.  [*Id.* at ¶¶ 8.2.13–8.2.15].  The Archdiocese Defendants contend that these allegations cannot support a claim for IIED or defamation.  *See* [Doc. 34 at 7–10].

A.     **Intentional Infliction of Emotional Distress**

To state a claim for IIED, Plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant[s] which (2) intentionally or recklessly (3) causes the plaintiff to suffer severe emotional distress."  *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (brackets and quotation omitted).[8]  "Extreme and outrageous" conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.* (quotation omitted).  Rather, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.*

---

[8] Plaintiff contends that District of Columbia law should control her tort claims.  [Doc. 1 at ¶ 7].  The Archdiocese Defendants apply District of Columbia law in the Motion to Dismiss without conceding the issue.  [Doc. 34 at 8 n.2].  The Court accordingly applies District of Columbia law in deciding the Motion to Dismiss, without further analysis.  *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

Under this "exceptionally demanding" standard, even race discrimination amounts to extreme and outrageous conduct only when there is a "pattern of harassment, as opposed to a few isolated incidents." *Apollo v. Bank of Am., N.A.*, 315 F. Supp. 3d 436, 439 (D.D.C. 2018) (quotations omitted). And at the motion-to-dismiss stage, "the allegations of the complaint must afford a basis for concluding that the plaintiff may be able to prove conduct of the required enormity." *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 53 (D.D.C. 2019) (cleaned up).

The Court agrees with the Archdiocese Defendants that Plaintiff's allegations fail to meet the high bar of extreme and outrageous conduct. The facts alleged by Plaintiff suggest that, after the tour, it was Ms. Nwosu who attempted to contact Sister Bolduc via email and in person. At most, Sister Bolduc's conduct in failing to respond to an email and reacting unfavorably when Ms. Nwosu appeared at her convent amounts to a mere insult or indignity. And the allegations that Sister Bolduc or other Archdiocese Defendants somehow "brainwashed" Mr. Johnson are too vague and conclusory to "raise [Plaintiff's] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, to the extent Ms. Nwosu attempts to assert an IIED claim based on the events of the tour, Plaintiff alleges "a few occasions of insulting conduct," not the pattern of harassment required to state an IIED claim based on alleged race discrimination. *Apollo*, 315 F. Supp. 3d at 439. Because Ms. Nwosu fails to plausibly allege extreme and outrageous conduct, her IIED claim fails. Accordingly, Plaintiff's IIED claim is respectfully **DISMISSED without prejudice** as to the Archdiocese Defendants.

## B.    Defamation

As for defamation, Ms. Nwosu must allege "specific defamatory comments by pleading the time, place, content, speaker, and listener of the alleged defamatory matter." *Stovell v. James*, 810 F. Supp. 2d 237, 248 (D.D.C. 2011) (cleaned up).  Courts allow some latitude in the exact details, but the factual allegations must be "sufficient to permit [the opposing party] to form responsive pleadings."  *See Williams v. District of Columbia*, 9 A.3d 484, 491–93 (D.C. 2010) (quotation omitted).  In addition to pleading that factual minimum, a defamation plaintiff must plausibly allege

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009) (quotation omitted).  With respect to the fourth element, an alleged defamatory statement is actionable as a matter of law if, among other things, it accuses the subject of a crime.  *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 73 (D.D.C. 2021); *Farnum v. Colbert*, 293 A.2d 279, 281 (D.C. 1972).  If the statement is not actionable as a matter of law, the plaintiff must plead "special harm," which is "limited to actual pecuniary loss."  *Franklin v. Pepco Holdings, Inc. (PHI)*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012) (quoting *FAA v. Cooper*, 566 U.S. 284, 295 (2012)).

The Archdiocese Defendants contend that Ms. Nwosu's statements fail to provide enough detail to permit them to form responsive pleadings.  [Doc. 34 at 9–10].  They also contend that she has failed to allege any statement that is actionable as a matter of law or has caused her special harm.  [*Id.* at 10].  For the most part, the Court agrees that Plaintiff fails to put forward sufficient factual detail to make out a claim for defamation.

The Complaint repeatedly refers to Sister Bolduc's "slander" without providing any details about the content or circumstances of the alleged statements.  *See, e.g.*, [Doc. 1 at ¶¶ 8.2.8, 8.2.13, 8.2.16].   These conclusory assertions cannot sustain a claim for defamation.  *See Williams*, 9 A.3d at 492.

One statement, however, provides enough detail to merit closer inspection.  Ms. Nwosu alleges that "[s]ometime in November 2023, [Sister Bolduc] accused Ms. Nwosu of repeatedly harassing her over a period of days at her convent and reported it to Mr. Johnson."  [Doc. 1 at ¶ 8.2.6].  According to Plaintiff, Sister Bolduc's statement that Ms. Nwosu had "repeatedly harass[ed]" her caused Mr. Johnson to obtain a protective order against her.  [*Id.*].  Unlike Plaintiff's other allegations of defamation, the Complaint sets out the substance of this statement, the speaker and listener, and an approximate timeframe for when the statement was made.  *See Williams*, 9 A.3d at 492–93.

Nevertheless, Ms. Nwosu does not plausibly allege that this statement satisfies the fourth element of defamation.  First, she does not sufficiently allege that Sister Bolduc's accusation of repeated harassment is actionable as a matter of law.  To be sure, the statement that Ms. Nwosu "repeatedly harass[ed]" Sister Bolduc at her convent accuses Ms. Nwosu of unsavory conduct.  But Ms. Nwosu does not explain how Sister Bolduc's statement "impute[s] to [Plaintiff] the commission of some criminal offense for which [she] may be indicted and punished."  *Farnum*, 293 A.2d at 281.  The Court does not exclude the possibility that, under District of Columbia law, some form of repeated harassment might qualify as a crime.  Ms. Nwosu does not, however, specify what crime that might be.  Nor does she provide enough detail about the accusation of harassment to render a criminal implication apparent.  *Cf. Williams*, 9 A.3d at 492 (finding plaintiff's allegation that

he was "terminated for 'embezzlement'" sufficient to survive motion to dismiss despite lack of detail about specific statements). As such, the Court can only speculate about the actionability of Ms. Nwosu's allegations—and it is not the Court's role to construct an argument on her behalf. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Because Ms. Nwosu fails to sufficiently allege Sister Bolduc's statement was actionable as a matter of law, she must allege "special harm" in the form of "actual pecuniary loss." *Franklin*, 875 F. Supp. 2d at 75. Yet Ms. Nwosu alleges no pecuniary loss flowing from Sister Bolduc's statement that Ms. Nwosu harassed her, nor from Mr. Johnson's ensuing decision to obtain a protective order. *See* [Doc. 1 at ¶ 9]. Rather, she focuses on the loss of her relationship with Mr. Johnson. *See, e.g.*, [*id.* at ¶¶ 8.2.21, 8.2.24]. But non-pecuniary, "general damages" are distinct from special harm, *Cooper*, 566 U.S. at 295–96 & n.7, and are insufficient to state a defamation claim based on a statement that is not actionable as a matter of law, *see Franklin*, 875 F. Supp. 2d at 75. Accordingly, Count Two is respectfully **DISMISSED without prejudice** to the extent it asserts a defamation claim against the Archdiocese Defendants.

## III.    Count Three:  Breach of Contract

Ms. Nwosu next asserts a breach of contract claim based on the Archdiocese Defendants' alleged breach of the Catechism of the Catholic Church and other related doctrines. *See generally* [Doc. 1 at ¶ 8.3]. She alleges that the Parties accepted this contract through baptism and acceptance of "the Sacraments of the Catholic Church." [*Id.* at ¶ 8.3.6]. Ms. Nwosu also asserts that this agreement extends to the "code of conduct of the Catechism of the Catholic [C]hurch issued by the Holy See." [*Id.* at ¶ 8.3.9].

She contends that this code "bound" Defendants to report or investigate Ms. Nwosu's allegations against Sister Bolduc, and they failed to do so.  [*Id.*].

The Archdiocese Defendants argue that Count Three fails to state a claim for breach of contract.   [Doc. 34 at 10–12].   They further argue that Count Three impermissibly invites the Court to "scrutinize the Archdiocese Defendants' religious practices and doctrines," violating the Supreme Court's warnings against judicial review of "matters of ecclesiastical cognizance."  [*Id.* at 12 n.3 (quoting *Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich*, 426 U.S. 696, 715 (1976))].

This latter argument invokes a body of law referred to as the "ecclesiastical abstention doctrine."  *See, e.g.*, *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 46 (D.D.C. 2017).   The Supreme Court has long recognized that, under the First Amendment, "religious freedom encompasses the power (of religious bodies) to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."  *Serbian E. Orthodox*, 426 U.S. at 721–22 (quotation omitted).   Thus, as this Court recently explained, "[c]ourts do not have subject matter jurisdiction over matters that are 'strictly and purely ecclesiastical.'"  *See Avodah Farms v. O'Hara-Rusckowski*, No. 24-cv-00233-NYW-CYC, 2025 WL 1676509, at *5 (D. Colo. June 13, 2025) (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1871)).   Courts may, however, "resolve disputes involving religious organizations as long as the courts employ 'neutral principles of law' and their decisions are not premised upon their 'consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.'"  *Meshel v. Ohev Sholom*

*Talmud Torah*, 869 A.2d 343, 354 (D.C. 2005) (quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979)) (applying "neutral principles" approach to contract claim).[9]

Ms. Nwosu's breach of contract claim presents a "purely ecclesiastical" dispute that falls outside the Court's subject matter jurisdiction. Whether Defendants breached their obligations and duties under Catholic Church doctrine or rules necessarily requires consideration of "doctrinal matters" and "tenets of faith." *See id*. And whether a contract exists at all depends on Plaintiff's allegations surrounding the "Sacraments of the Catholic Church." *See* [Doc. 1 at ¶ 8.3.6]. The Court cannot resolve these questions using neutral principles of contract law. *See Samuel v. Lakew*, 116 A.3d 1252, 1258–59 (D.C. 2015) (finding ecclesiastical abstention barred dispute over church bylaws that required determination of whether defendants complied with church "laws and traditions"). Accordingly, Count Three is respectfully **DISMISSED without prejudice** for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (reiterating that a dismissal for lack of jurisdiction must be without prejudice).

## IV.    Count Four:  Negligence

Ms. Nwosu brings a negligence claim against all named Defendants other than Sister Bolduc. [Doc. 1 at ¶ 8.4.2]. To state a claim for negligence, Ms. Nwosu must allege that Defendants (1) owed her a duty, (2) breached that duty, and (3) in doing so, proximately caused an injury to Plaintiff. *See Hedgepeth v. Whitman Walker Clinic*, 22

---

[9] The Supreme Court has held that, at least in the property law context, it is for a State to decide whether to adopt the "neutral principles" approach. *Jones*, 443 U.S. at 602.

A.3d 789, 793 (D.C. 2011).  Whether a legal duty exists is a "threshold determination."
*Id.*

Plaintiff alleges that Defendants owe "the public and Catholic faithful" a duty of
care, "as endorsed in their code of conduct."  [Doc. 1 at ¶ 8.4.2].  Construing the Complaint
liberally, the Court understands this to incorporate Plaintiff's allegation in Count Three
that the Defendants are "bound by the professional and ethical code of conduct of the
Catechism of the Catholic Church."  [*Id.* at ¶ 8.3.9].  The Archdiocese Defendants argue
that this is insufficient to state a negligence claim, because the alleged duty is "based on
exclusively doctrinal grounds," rather than "secular criteria."  [Doc. 34 at 13–14].

The Court respectfully agrees with Defendants that the alleged duty arises from
religious doctrine, such that the ecclesiastical abstention doctrine bars Count Four.  As
Defendants point out, a court may review a negligence claim against a religious
organization when the alleged duty is based on "uniformly applicable, secular criteria that
would not involve the court in resolving a dispute with doctrinal implications."  *Bible Way
Church of Our Lord Jesus Christ of Apostolic Faith of Wash., D.C. v. Beards*, 680 A.2d
419, 428 (D.C. 1996) (citing *Jones*, 443 U.S. at 608) (further citations omitted).  But as
with the breach of contract claim, the Court cannot decide Plaintiff's negligence claim
using neutral secular criteria.  *See supra* Part III.  Plaintiff refers to the Catechism of the
Catholic Faith as a "professional and ethical code of conduct," suggesting that the
Catechism could be viewed as something like an ordinary workplace regulation.  *See*
[Doc. 1 at ¶ 8.3.9].  But she cites no authority for that proposition.  And as explained
above, the Court lacks jurisdiction to evaluate Defendants' duties under and compliance
with religious doctrine, faith, and morals.  *See Avodah Farms*, 2025 WL 1676509, at *5.

Accordingly, Count Four is **DISMISSED without prejudice** for lack of subject matter jurisdiction.  *See Brereton*, 434 F.3d at 1216.

## V.    Count Five:  Fraudulent and Negligent Misrepresentation

Ms. Nwosu's final claim asserts fraudulent and negligent misrepresentation against the Archdiocese, the Apostolic Nunciature, and 206 Tours.  [Doc. 1 at ¶ 8.5.1]. She claims that these Defendants misrepresented that she would not be subject to racial discrimination in the Catholic Church and on the tour.  [*Id.* at ¶¶ 8.5.2–8.5.3, 8.5.5].  Ms. Nwosu alleges that this "precept of non-discrimination" induced her to donate money to the Catholic Church and join the tour.  [*Id.* at ¶¶ 8.5.3, 8.5.7].  The Archdiocese Defendants argue that this claim lacks sufficient detail about the contents or circumstances of any particular misrepresentation.  [Doc. 34 at 14–15].

To state a claim for negligent misrepresentation, a plaintiff must allege "(1) that the defendant made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that the plaintiff reasonably relied upon the false statement or omission to his detriment."  *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015) (cleaned up).   Similarly, to state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken in reliance upon the representation."  *Steele v. Fannie Mae*, 134 F. Supp. 3d 191, 200 (D.D.C. 2015) (quotation omitted).  As in this District, federal courts in the District of Columbia apply the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b) to claims for fraudulent or negligent misrepresentation.  *See Dean v. Wright Med. Tech., Inc.*, 593 F. Supp. 3d 1086, 1095 & n.6 (D. Colo. 2022); *Cap. Hill*

*Dev., LLC v. Cohn, Goldberg, & Deutsch, LLC*, No. 1:24-cv-03353-CJN, 2025 WL 1650390, at *10 (D.D.C. June 11, 2025). Plaintiff therefore must plead the elements of her misrepresentation claims with particularity, including "the time, place, and content of [the] alleged misrepresentations or omissions." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 255 (D.D.C. 2004) (citation omitted).

The Court agrees with the Archdiocese Defendants that Ms. Nwosu's conclusory allegations cannot sustain her misrepresentation claims. Count Five largely consists of broad allegations that the relevant Defendants "pretend to treat all persons equally" but act differently in reality. *See* [Doc. 1 at ¶ 8.5.2]. Ms. Nwosu provides no details about what the specific misstatements were, who made them, the circumstances in which they were made, or how she relied on those particular statements in deciding to make religious donations or attend the tour. *See Cap. Hill Dev.*, 2025 WL 1650390, at *10 (dismissing misrepresentation claim that omitted "specific details regarding the circumstances of [the] supposed misrepresentation and the identities of the parties involved"). She does identify one particular statement—an advertisement by 206 Tours that "all are welcome," [Doc. 1 at ¶ 8.5.7 (capitalization omitted)]—but does not explain how she relied on this statement in enrolling in the tour. Without particularized factual allegations, Plaintiff's "blanket belief that the defendants as a group" made misrepresentations is insufficient. *Anderson*, 221 F.R.D. at 255. The Court concludes that Plaintiff fails to adequately allege claims for fraudulent and negligent misrepresentation, and Count Five is **DISMISSED without prejudice** as to the Archdiocese Defendants.[10]

---

[10] Ms. Nwosu's remaining motions, [Doc. 11; Doc. 15], are **DENIED as moot** in light of both this Order and the Court's prior Order, [Doc. 41], granting Mr. Johnson's Motion to Quash Subpoena.

## VI.    Order to Show Cause

Having addressed the claims against the Archdiocese Defendants, the Court turns to the remaining Defendants—206 Tours, the Apostolic Nunciature of the United States of America ("Apostolic Nunciature"), and the John Doe Defendants.   None of these Defendants have appeared in this case.   There is no indication that the Apostolic Nunciature or the John Doe Defendants[11] have been served, and the 90-day period for service under Rule 4(m) has expired.  *See* Fed. R. Civ. P. 4(m).  As for 206 Tours, Plaintiff has filed two Proof of Service forms that claim Ms. Nwosu served 206 Tours "by courier on the recipient's address in their usual place of work in Tennessee, at 750 Old Hickory B, as their registered agent address was no longer in operation."   [Doc. 9 at 1 (capitalization omitted); Doc. 10 at 1].  Plaintiff states that she served 206 Tours by "postal mail," and has attached a "proof-of-delivery" document that indicates the mailing was

---

[11] "[P]ursuant to Fed. R. Civ. P. 10, a caption to a complaint must include the names of all parties." *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at *3 (D. Colo. Apr. 27, 2011), *aff'd*, 456 F. App'x 718 (10th Cir. 2012). The "Federal Rules of Civil Procedure do not explicitly allow the naming of fictitious or anonymous parties in a lawsuit," and for this reason, "'an action may be dismissed if the defendant is not sufficiently identified to permit service of process.'"  *Id.* (quoting *Stratton v. City of Boston*, 731 F. Supp. 42, 45 (D. Mass. 1989)).  In addition, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  The Court recognizes that Plaintiff has not had the benefit of discovery in this case, which could help ascertain the John Doe Defendants' identities.  "However, the Court should only allow claims against parties whose names are unknown to proceed 'if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" *Pearson v. Colo. Dep't of Transp.*, No. 18-cv-02538-KLM, 2019 WL 3550208, at *4 (D. Colo. Aug. 5, 2019) (quoting *Hartley v. Wilfert*, 931 F. Supp. 2d 230, 233 (D.D.C. 2013)). Such is not the case here, where the operative Complaint lacks any specific allegations as to the John Doe Defendants.  *See generally* [Doc. 1].

signed for by a "C. Lachman."  *E.g.*, [Doc. 9 at 2–3 (capitalization omitted)].  There is no return receipt or signature for the mailing.  [*Id.*].

The Court respectfully questions whether Plaintiff's filings satisfy her burden to establish that her service on 206 Tours was valid.  *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).  Federal Rule of Civil Procedure 4(h)(1)(B) authorizes service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  But service by mail does not satisfy Rule 4(h)(1)(B). *See, e.g.*, *Towner v. USAA Fed. Sav. Bank*, No. 2:14-cv-00148-DN-DBP, 2014 WL 2608517, at *3 (D. Utah June 11, 2014) (collecting cases).  Alternatively, Rule 4(h)(1)(A) permits service "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Rule 4(e)(1) permits service in accordance with state law "where the district court is located or where service was made."

Plaintiff claims to have served 206 Tours in Tennessee, so her service may be valid under either Colorado or Tennessee law.  Colorado law establishes personal service as a default rule, but permits substitute service—including service by mail—after the party making service files a motion demonstrating its due diligence in attempting to effect personal service.  Colo. Rule Civ. P. 4(e), (f).  Plaintiff filed no motion for substitute service before serving 206 Tours by mail, so she has not demonstrated that her service is valid under Colorado law.  *See O'Hanlon v. AccessU2 Mobile Sols., LLC*, No. 18-cv-00185-RBJ-NYW, 2018 WL 3586395, at *15 (D. Colo. July 26, 2018) (finding service by mail invalid under Colorado law when plaintiff failed to file a motion requesting permission for substitute service before attempting service by mail).

Tennessee law, on the other hand, does permit service by mail. *See* Tenn. Rule Civ. Pro. 4.04(10). Rule 4.04(10) of the Tennessee Rules of Civil Procedure authorizes service via "registered return receipt or certified return receipt mail to the defendant." *Id.* Rule 4.03(2) further requires that:

> When process is served by mail, the original summons, endorsed as below; an affidavit of the person making service setting forth the person's compliance with the requirements of this rule; and, the return receipt shall be sent to and filed by the clerk. The person making service shall endorse over his or her signature on the original summons the date of mailing a certified copy of the summons and a copy of the complaint to the defendant and the date of receipt of return receipt from the defendant. *If the return receipt is signed by the defendant, or by person designated by Rule 4.04 or by statute, service on the defendant shall be complete.*

Tenn. Rule Civ. Pro. 4.03(2) (emphasis added). The Tennessee Supreme Court has explained that "[t]he language of Rule 4.03 set[s] forth a mandatory requirement rather than a discretionary ideal that need not be strictly enforced to confer jurisdiction over a party." *Hall v. Haynes*, 319 S.W.3d 564, 577 (Tenn. 2010) (quotation omitted). Here, even assuming that Ms. Nwosu used registered or certified mail in compliance with Rule 4.04(10), she has failed to attach a signed return receipt to her proof of service filings. *See* [Doc. 9; Doc. 10]. Nor has she properly filed an endorsed copy of the original summons. Ms. Nwosu has thus failed to complete service under Tennessee law.

In sum, it appears that Ms. Nwosu has failed to effect valid, timely service on 206 Tours, the Apostolic Nunciature, or the John Doe Defendants. And because the 90-day period for service under Fed. R. Civ. P. 4(m) has expired, Ms. Nwosu shall **SHOW CAUSE,** in writing, on or before August 14, 2025, why her claims against these Defendants should not be dismissed for failure to serve. <u>**The Court expressly advises**</u>

**Plaintiff that failure to respond to the Order to Show Cause may result in dismissal
of these Defendants without any further notice by the Court**

### CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    The Archdiocese Defendants' Motion to Dismiss [Doc. 34] is **GRANTED in
part** to the extent they seek dismissal of Plaintiff's claims against them, and
**DENIED in part** to the extent they request that Plaintiff's claims be
dismissed with prejudice;

(2)    Count One is **DISMISSED without prejudice** as to Plaintiff's race
discrimination claim against the Archdiocese Defendants;

(3)    Counts Two and Five are **DISMISSED without prejudice** as to the
Archdiocese Defendants;

(4)    Counts Three and Four are **DISMISSED without prejudice** as to all
Defendants for lack of subject matter jurisdiction;

(5)    No later than August 14, 2025, Ms. Nwosu shall **SHOW CAUSE**, in writing,
why her age discrimination claim under Count One should not be dismissed
pursuant to Fed. R. Civ. P. 12(b)(6);

(6)    No later than August 14, 2025, Ms. Nwosu shall **SHOW CAUSE**, in writing,
why her claims against 206 Tours, the Apostolic Nunciature, and the John
Doe Defendants should not be dismissed for failure to serve; and

(7)     Plaintiff's Motion for Contempt of Court to Be Entered Against Respondent

Jeffrey Johnson, [Doc. 11], and Plaintiff's Motion to Strike Third Party

Jeffrey Johnson's Motion to Quash Subpoena, [Doc. 15], are **DENIED as**

**moot**.

DATED:  July 24, 2025                          BY THE COURT:

_____
Nina Y. Wang
United States District Judge